WALKER *v.* TIFFIN GOLD AND SILVER MINING CO.

PRACTICE — *pleading after rule day.* If a rule to plead expires in term time, a pleading may be interposed at any time before application for default.

*But it is otherwise* where the rule expires in vacation. In that case the defendant must plead within the time specified, and a demurrer filed after the rule day, may be struck from the files, and the bill taken as confessed.

MORTGAGE *may be evidenced by an absolute deed and bond to reconvey.* T. conveyed to W. his interest in certain mining property, and, upon the next day, W., the grantee, executed to T. his bond, and thereby agreed to reconvey the same property after he should take from the mine the amount of a certain note.

*Held,* 1. That the deed and bond should be read in connection, and together they constitute a mortgage.

2. That a grantee of the equity of redemption, after satisfaction of the amount due on the note, was entitled to a release from the mortgagee.

DECREE *should not extend beyond the case made in the bill.* Upon bill to set aside a quitclaim deed, or procure a release of a mortgage, if there is nothing in the case to show that the defendant has no other interest in the property than that which he acquired by such deed or mortgage, it is error to decree an absolute release which may operate against another estate acquired by the defendant.

*And where it is not shown by the bill* that complainant is entitled to the possession of property, it is error to award such possession.

### *Error to District Court, Summit County.*

THE bill was filed by defendant in error against plaintiff in error to set aside a deed made by one L. G. Tubbs to plaintiff in error conveying certain property in Summit county, and also procure a release of a certain mortgage executed by L. G. Tubbs, John Shock and Adam L. Shock to plaintiff in error upon the same premises. The bill charged that on the 5th of November, 1869, complainant acquired title to certain mining property from Ziba Surles, John, Adam L. and Daniel Shock. That on the 12th of October, 1864, John and Adam L. Shock received from L. G. Tubbs a bond for a deed to a portion of the same property. That John and Adam L. Shock performed the condition of said bond, and thereupon Tubbs conveyed to them the property therein described. That on the 16th of October, 1865, Tubbs, Adam L. and John Shock mortgaged a portion of the same property to Silas M. Walker, the defendant, to secure the payment of $1,500, then due by promissory note, but there was no time fixed for payment of the same. The bill also charged that defendant Walker, knowing the property to be of great value, fraudulently intending to get possession of the property, gave to Tubbs his bond dated May 1, 1867, conditioned to work the property and indorse the net proceeds thereof upon the note described in the mortgage. That defendant Walker, on the 30th of April, 1867, in fraud of the rights of Adam L. and John Shock, and with full knowledge of the existence of the bond from L. G.

Tubbs to them, procured from Tubbs a quitclaim deed for the same property. The bill further charged that Walker had worked the property for nearly three years and had obtained therefrom the sum of $12,000, for which he had never accounted to any one.

The special prayer of the bill was as follows: "And the said complainant prays that this honorable court will, by a decree thereof, cancel and declare null and void the deed given by the said L. G. Tubbs to the said Silas M. Walker, defendant, and marked herein as Exhibit " I," and by its decree cancel and release the incumbrance created on the said property in said bond, marked Exhibit " B " aforesaid, and included in the deed marked Exhibit "A " aforesaid, and that by a further decree of this honorable court, the complainant may be put in the peaceable possession of all and singular the property described· in said bond, marked Exhibit " B " aforesaid, and now claimed and possessed by the said defendant."

Annexed to the bill as exhibits were the several conveyances and instruments referred to in the bill.

At the August term, A. D. 1870, an order was entered requiring the defendant to plead, answer or demur to the bill by the 1st of July, 1871. A demurrer was filed by defendant on the 14th of August, 1871, which the court, upon motion, struck from the files and ordered that the bill be taken as confessed. A decree was entered, in which the deed from Tubbs to Walker was declared to be fraudulent and void, and the defendant was required to deliver the same up to be canceled, and within ten days execute to the complainant "a deed of release of the said ditch and mining property in the said deed from the said Tubbs to the said defendant described," and upon default thereof, a commissioner was appointed to make the conveyance ; the court also required the note and mortgage to be delivered up to be canceled, and awarded the possession of the premises described to the complainant.

Mr. C. S. EYSTER and Messrs. MILLER and MARKHAM, for plaintiff in error.

Mr. M. BENEDICT, for defendant in error.

WELLS, J.    I.   It is argued that the demurrer put in by the plaintiff in error in the court below, though interposed subsequent to the expiration of the rule given at the previous term, was, nevertheless, in apt time, having been filed before any further steps taken in the cause, and this position seems to be warranted by the cases cited by counsel. *Castle* v. *Judson*, 17 Ill. 584 ; *Cook* v. *Forrest*, 18 id. 582 ; *Bingham* v. *Meries*, 7 Cr. 99.   The case of *Dunn* v. *Keegan*, 3 Scam. 295, seems to countenance the same doctrine.

We agree that where the rule expires in term time and the pleading be interposed before application for default, it may well be considered as filed in apt time, even though after the lapse of the day named in the rule, for in such case the opposite party omitting to take advantage of his adversary's default, on the first day thereof, may be said to impliedly stipulate that the pleading may still be interposed, that is to say, that the rule shall be so extended to include that day.   This is the fair inference from his silence. And this implied stipulation may be said to be renewed with each hour and moment which lapses, so that, if interposed at any time before default prayed, the pleading is in time.   This I conceive to be the only reasoning upon which the usage obtaining in the courts in this respect can be supported, for unless a supposed stipulation of parties interposes to excuse the delay, it is in effect to say that the orders of the court in this respect are of no binding force.   But it is clear that no such stipulation can be implied to excuse a failure to comply with a rule expiring in vacation, for, in such case, the party to be answered has no opportunity to take advantage of the default until the term sits, his silence in the meantime being enforced cannot give rise to any inference of acquiescence.   And not only is the rule when applied in the last case unwarranted by the reasoning which supports it in the former, but it is manifestly against good policy that it should be applied in those cases where the time limited expires in vacation.   If, when required to

plead or answer at an early day in the vacation, the defendant may defer his pleading until the day before the term convenes, it will lead to indefinite delays. In the present case the bill is of a nature to require the careful consideration of counsel in order to the preparation of the defense thereto, and the determination of the question whether the defendant should answer in the first instance ; or except, plead or demur. It was eminently proper, therefore, the first term being of short duration, that a day in vacation should be fixed for the coming in of answer, and the day which was fixed, being forty-five days before the second term should convene, was a reasonable one ; it afforded to counsel for the defendant ample time to determine the preliminary questions and interpose his defense understandingly ; it also afforded to the complainant's counsel time to consider the defendant's demurrer if one should be put in and to prepare to resist it or to prepare amendments to the bill to be interposed as soon as leave should be obtained for that purpose, if the demurrer should appear to be well taken ; or if an answer had been interposed, replication might have been put in and the testimony prepared in order to final hearing at the second term. The rule contemplated these mutual advantages and opportunities, and was framed in the interest of both parties. But by his disobedience and by demurring at the end of the vacation the defendant sought to engross all the advantages to himself. His course compelled the plaintiff either to submit to a further delay or else to proceed to the consideration of the demurrer or the preparation of amendments, precipitately and without that deliberation which, in all difficult and important litigation, appears to be necessary to avoid error. To say that the court was bound to accept the demurrer, at so late a day, is to prescribe a rule which will open the door to delays against which the courts will be powerless to afford relief, except by restricting all rules to plead or answer to a day in the term which, in many instances, would do injustice to defendants. Upon the same reasoning which was applied in *Castle* v. *Judson*, it might be held that the plaintiff's

omission to declare ten days before the term as required by the eighth section of the practice act, shall not subject him to the penalty of continuance which is there prescribed, provided the declaration be filed at any time before the defendant moves for the continuance.

The section here referred to is only a statutory rule to declare, and is of no more binding force than a like rule of court. Yet this construction of the statute was never indulged, nor, so far as I know, ever contended for. Whatever may be the weight of authority elsewhere, we conceive that a just distinction may be taken between rules to plead expiring in term time, and those which expire in vacation. In the latter case, we think a strict observance of the rule ought to be enforced. Clearly, for cause shown, the court may, in its discretion, excuse the default, and permit the party to interpose his pleading after the lapse of the day named in the rule; but unless some matter of excuse be shown, a pleading filed after the day limited ought not to be regarded, where, as in this case, the plaintiff, at the earliest opportunity, applies to have the pleading taken from the files.

2. It is argued that, by the conveyance of April 30, 1867, the defendant obtained the title which Tubbs, before that, had; and that the obligees in the bond of October 12, 1864, if they desired to perform the conditions thereby imposed upon them, should have applied to the defendant. The payment of the purchase-money to, and the conveyance by, Tubbs, it is said, work nothing; for Tubbs had then nothing to convey; therefore, it is said, there was error in requiring the defendant to release to the complainant. But this argument omits from view the bond to reconvey, which was executed by Walker to Tubbs, on the 1st day of May, A. D. 1867. This obligation gives to the former conveyance the effect of a mere mortgage; it is as if the condition of the bond had been written in the deed. If the obligation to convey had been conditioned upon payment at the day, or the like, then, in order to entitle the obligee to have performance of the bond, upon payment, at a later day, it might,

perhaps, be required of him to show that, in fact, the conveyance was made in contemplation of the subsequent execution of a bond to reconvey, and that, in truth, both instruments were one transaction. But here the condition of the bond is to reconvey, on payment, without limitation as to time, and it appears to us that, upon their face, these two instruments, the conveyance of April 30 and the bond of May 1, have the effect of a mortgage merely.

So far as the effect of the conveyance by Tubbs is concerned, therefore, Walker was never any thing more than a mortgagee in possession. Whenever his debt was satisfied, by the yield of the mine, or otherwise, he was bound to reconvey; and the obligee, Tubbs, having, by the conveyance of October 11, 1869, transferred his equity to the Shocks, the complainants, by their conveyance of November 5, 1869, succeeded to all the rights which Tubbs had, and the defendant, on the satisfaction of his debt, was bound to convey to the complainant, whether the Shocks had performed the condition of the bond or not. So far as this argument is concerned, therefore, there was no error in the decree.

But it is to be observed that the decree requires the defendant to release to the complainant the premises "in the deed from the said Tubbs to the said defendant described." This imports that the defendant shall release all present interest. It is nowhere alleged that Tubbs held paramount or perfect title, or even had any estate whatsoever in the premises; it does not affirmatively appear that the plaintiff in error received the possession from him; nor does the acceptance of a bare release, such as the conveyance of April 30, 1867, was, estop plaintiff in error from questioning the title of the releasor. For any thing that can be known then, the plaintiff in error may, since the conveyance from Tubbs, have acquired a superior title from another source. The effect of the release, which by the decree the defendant is required to make, would be to pass out of plaintiff this superior title. In this, therefore, there was error.

3. The decree of the district court directs that the defendant, on demand, surrender to the complainant possession

of the premises therein described to the complainant. The allegation of the bill is, that on, etc., the complainant acquired a title to certain property known as, etc., situated, etc., by virtue of a certain deed duly executed according to law, and delivered to said complainants by, etc. For a more particular description of the property, reference is made to a copy of the deed attached. Now, if we look to this allegation of the bill alone, it is altogether uncertain whether the complainant is entitled to what was decreed or not. For the word " title" imports not an estate, or the interest which one hath in lands, but "the means whereby the owner hath the just possession of his property." 2 Bl. Com. 195. And this title, it is said, may be, 1st, a bare possession merely ; or, 2d, the right of possession ; or, 3d, the right of property without either possession or a right of possession ; or, 4th, the right of property, united with an actual and lawful seizin. By this allegation of the bill, therefore, if we look alone to this, while it appears to me that it cannot be said that the plaintiff holds otherwise than in severalty, it is utterly uncertain whether it is entitled to the present possession or not. It is entirely consistent with this allegation that another has an estate for life or for years, not yet determined. Neither do I discover any other allegation in the bill which supplements this. It is nowhere alleged that any of those from whom the complainant deduces title had any present estate at the time of these several conveyances, or ever had possession in fact, nor that the complainant is, or ever was, entitled to possession. And if we may look to what is contained in the exhibits, to explain the obscurity of these allegations (the propriety of which is not altogether clear), nothing appears to aid us, for none of the conveyances exhibited assume to pass a present interest, but only all the right, title and interest of the grantor, which may have been either present or reversionary.

Again, if we look to the exhibits to aid the bill, it would seem that we must give effect to every thing which appears there, whether favorable to the plaintiff or otherwise ; and

by the exhibits it appears affirmatively that in a large part of the estate in controversy, the complainant has but an undivided moiety ; while the decree is susceptible of a construction which requires that the complainant be admitted to the full and absolute possession of the whole estate.

So far as the decree directs an absolute release by the defendant, Walker, and a surrender of his possession to the complainant, the decree is beyond the allegation of the bill, and must be reversed ; and if the decree of this court shall go no further than this, all questions presented by the present record will have been completely resolved. Inasmuch, however, as to pause here will leave the controversy between these parties still undetermined, and will require the complainant to renew the litigation in another form, we shall reverse the decree in all things, and remand the cause with direction to the district court to allow the complainant to file an amended bill.

*Reversed.*